**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Rahul Tiwari**<br><br>        Plaintiff,<br><br>v.<br><br>**KRISTI NOEM, in her**<br>**official capacity as**<br>**Secretary of Homeland Security**<br><br>**DEPARTMENT OF**<br>**HOMELAND SECURTY; and**<br><br>**TODD LYONS, in his**<br>**official capacity as**<br>**Acting Director of**<br>**U.S. Immigration and Customs Enforcement**<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff, by and through undersigned counsel, commence this action against the above-named Defendants, and state as follows:

## **PRELIMINARY STATEMENT**

1. Plaintiff Rahul Tiwari is an international student who was in full-time F-1 student status in the United States in Massachusetts. They are one of suspected thousands of F-1 students nationwide whose Student and Exchange Visitor Information System ("SEVIS") record has been abruptly and unlawfully terminated by the U.S. Immigration and Customs Enforcement ("ICE") during the last several weeks.

2. The Student and Exchange Visitor Information Systems is a government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program (SEVP), uses SEVIS to monitor student status. Plaintiff was notified through their school that their SEVIS record had been terminated for the reason "OTHER – Individual identified in criminal records check and/or has had their VISA revoked."

3. The termination of a SEVIS record effectively ends F-1 student status. Even when a visa is revoked, however, ICE is not authorized to terminate Plaintiff's student status. The grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiff's SEVIS record. An F-1 visa controls a student's entry into the United States, not

2

their continued lawful presence once admitted. Plaintiff was in full compliance with the terms of their F-1 status and had not engaged in any conduct that would warrant termination of their status.

4. Rather, DHS's policy of unlawfully terminating SEVIS records based on visa revocations appears to be designed to coerce students, including Plaintiff, into abandoning their studies and "self-deporting" despite not violating their status. If ICE believes a student is deportable for having a revoked visa, it has the authority to initiate removal proceedings and make its case in court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

5. Over the past three weeks, visa revocations and SEVIS terminations have shaken campuses across the country. On information and belief, this policy appears to primarily be targeting African, Arab, Middle Eastern, Muslim, and Asian students. The SEVIS terminations have taken place against the backdrop of numerous demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students.

6. Plaintiff does not challenge any visa revocation in this action. Rather, Plaintiff brings this action under the Administrative Procedure Act, the Fifth

Amendment to the U.S. Constitution, and the Declaratory Judgment Act to challenge ICE's illegal termination of their SEVIS record.

## PARTIES

7. **Plaintiff Rahul Tiwari** is an international student who is enrolled in a college in Massachusetts and resides in Everett, Massachusetts.

8. **Defendant United States Department of Homeland Security (DHS)** is the federal cabinet department responsible for enforcing immigration laws inside the United States. DHS, through its subagencies, oversees the Student and Exchange Visitor Program ("SEVP") and the SEVIS database, which tracks and manages the status of F-1 students. DHS has ultimate authority for terminating nonimmigrants' statuses in SEVIS under certain conditions defined by law.  Defendant DHS is an "agency" within the meaning of 5 U.S.C. § 551(1).

9. **Defendant Kristi Noem** is the Secretary of Homeland Security and has ultimate authority over DHS.  In that capacity and through her agents, Defendant Noem has broad authority over the operation and enforcement of the immigration laws.  Defendant Noem is sued in her official capacity.

10. **Defendant Todd Lyons** is the Acting Director of ICE and has authority over the operations of ICE.  ICE is a component agency of DHS, and operate the SEVP, which administers the F-1 student program. SEVP/ICE officials have in recent instances invoked DHS's authority to terminate SEVIS records of

students, as occurred with Plaintiff. ICE issued or caused the issuance of the termination of Plaintiff's F-1 SEVIS record.

## JURISDICTION

11. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States, including the Immigration and Nationality Act ("INA"). The APA waives sovereign immunity for Plaintiff's claims seeking equitable relief from unlawful agency action. To the extent a constitutional due process claim is raised, this Court also has jurisdiction under 28 U.S.C. § 1331. No immigration removal proceedings have been initiated against Plaintiff, and he has no other adequate remedy, rendering judicial review appropriate.

## VENUE

12. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(e)(1), as Defendant is a U.S. agency, Plaintiff resides in the district, and no real property is involved in the action.

## STANDING

13. Plaintiff has Article III standing to litigate in this Court as (1) they have suffered an "injury in fact," (2) that is "fairly traceable to" the challenged conduct of Defendant, and (3) is "likely to be redressed" by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, the termination of Plaintiff's F-1 status prohibits them from continuing to

pursue their academic degree and requires that they abandon the U.S., or risk detention and deportation. This injury is "fairly traceable to" the challenge conduct of the Defendant, indeed, it is the direct result of the Defendant's conduct. A favorable decision from the Court would restore Plaintiff's SEVIS record and restore him to valid F-1 student status.

## BACKGROUND

### A. F-1 Student Status, Duration of Status, and SEVIS

14. An F-1 visa is a nonimmigrant visa issued to foreign students to allow them to enter the United States to pursue a full course of study at an approved academic institution. While an F-1 *visa* is the 'entry ticket' permitting a student to enter the U.S. from abroad, F-1 *status* is conferred on the student when (1) they are admitted to the U.S. in that classification or (2) their F-1 "change of status" or "extension of status" application is approved by U.S. Citizenship and Immigration Services ("USCIS"). Thus, students can (and often do) have F-1 status without an unexpired F-1 visa.

15. F-1 students are typically admitted for "duration of status" ("D/S"), which is a term of art defined as "the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 CFR 214.2(f)(5)(i).

6

16. In practical terms, as long as the student remains enrolled full-time (or is otherwise in a valid post-completion training period) and does not violate the conditions of their visa, their status continues, potentially for years, without the need for extension applications.

17. To maintain status, an F-1 student is obligated to comply with the applicable regulations, whose key requirements include: (1) enrolling in a full course of study each term; (2) refraining from unauthorized unemployment; (3) avoiding absences from the U.S. exceeding five months; (4) reporting name or address changes; and (5) refraining from committing a "crime of violence" "for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.2(f)(6), (f)(9), (f)(4), (f)(17), (g).

18. SEVIS is the electronic system through which ICE's SEVP monitors F-1 students and their schools. Each F-1 student possesses a SEVIS record, which schools must update with information about the student's enrollment, address, and employment authorization. Schools and SEVP each use SEVIS to record a student's failure to maintain status. If either party wishes to terminate a SEVIS record, a dropdown list of reasons is provided, where examples include: "Unauthorized employment," "Unauthorized drop below full course," "Failure to enroll," "Absent from country for over five months," "Academic dismissal," and "Otherwise failing to maintain status" (with

explanation). Notably, each reason for termination is tied to a clear regulatory requirement for maintenance of status.

B. **Regulatory Grounds for Termination of F-1 Status**

19. DHS's authority to terminate a nonimmigrant's status is circumscribed by regulation, which specifies only a few extraordinary bases for midstream status termination: "Within the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by (1) the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; (2) the introduction of a private bill to confer permanent resident status on such alien; or (3) pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d). The Third Circuit observed that DHS's ability to terminate F-1 status is indeed "limited by § 214.1(d)." *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100.

20. The regulation does not list visa revocation as a valid justification for termination of F-1 status. Indeed, State Department guidance confirms that "the revocation of their visa does not override the" "status granted by Customs and Border Protection ("CBP") at the time of their entry or their ability to stay in the United States (except in extremely rare circumstances)." *See* U.S. Dep't of State, Guidance Directive 2016-03, 9 FAM 403.11-3 – Visa Revocation (Sept. 2, 2016), *Available online at*:

8

https://j1visa.state.gov/wp-content/uploads/2016/09/2016-03-GD-Visa-Revocat ion-FINAL-Sept-2016.pdf.

21. DHS' internal policy guidance similarly affirms that "some circumstances require revocation of a nonimmigrant student's visa while the nonimmigrant is in the United States and in status. **Visa revocation is not, in itself, a cause for termination of the student's SEVIS record**." *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), *Available online at*: https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf (emphasis added).

22. Additionally, the regulation creates a specific notice requirement for status termination done for reasons of "public safety": that there be "notification in the Federal Register"—an important procedural due process safeguard.  In other words, with the exception of a conviction for a crime of violence in which a sentence of one year or more may be imposed, 8 C.F.R. § 214.1(g), criminal activity within the United States is not an independent reason for terminating status nor a reason by which ICE may determine that an individual has failed to maintain their status.  If ICE does believe the criminal activity rises to the level of deportability, they may instead initiate removal proceedings under INA § 240,

C. **Recent Events**

23. Universities across the country have reported that international students in F, J, and M statuses have had visas revoked. *Inside Higher Ed*, a higher education trade journal, notes that over 950 international students at universities across the country have been affected:



*See* Liam Knox, "Student Visa Dragnet Reaches Small Colleges," *Inside Higher Ed*. Published April 8, 2025. Graphic Updated April 12, 2025. *Available online at*: https://www.insidehighered.com/news/global/international-students-us/2025/04/08/trump-admin-broadens-scope-student-visa

24. College administrators have reported that reasons for termination have included "past criminal activity," "foreign policy threat" and a "'general' justification" which leaves administrators with "no idea" why status

terminated. In many instances, "students' SEVIS records were terminated for criminal infractions, "even though they were found innocent or the case [was] dismissed." *Id.*

25. Crucially, colleges and universities "say they're not being notified by the federal government" when such terminations occur. Consequently, the primary means of discovering status termination has become "proactive checks" of SEVIS. Indeed, "Massachusetts higher education institutions have resoundingly said individual students are not receiving notifications, and neither are the institutions themselves." *See* Hadley Barndollar, "What to know about SEVIS, the only way colleges find out student visas are canceled," *MassLive.* April 12, 2025. *Available online at*: https://www.masslive.com/news/2025/04/what-to-know-about-sevis-the-only-way-colleges-find-out-student-visas-are-canceled.html

26. The resultant panic and uncertainty among effected students has reportedly caused many to "leave the country out of fear that they could arrested by agents from ICE." *See* New York Times, "Nearly 300 Students Have Had Visas Revoked and Could Face Deportation," April 7, 2025. *Available online at*: https://www.nytimes.com/2025/04/07/us/student-visas-revoked-trump-administration.html

**FACTUAL ALLEGATIONS**

27. Plaintiff Rahul Tiwari is an international student who attends Northeastern University in Boston, MA. They are originally from India.

28. Plaintiff is focused on their studies and have not engaged in any significant political activity.

29. Plaintiff has been in the United States studying for several years and is currently on their second year of Optional Practical Training, with an expiration of that work authorization being February 16, 2026.

30. Plaintiff was issued a Form I-20 to enroll in college and they have been actively engaged in employment as part of their OPT.

31. In early April, Plaintiff received notice from their college that their SEVIS status had been terminated.

32. The reason given for the termination of their SEVIS record was "Other - Individual identified in criminal records check and/or has had their VISA revoked.  SEVIS record has been terminated."

33. Plaintiff is unaware of the factual basis for the termination of their SEVIS record.

34. Plaintiff has not been convicted of any crime of violence by which his F-1 status could be implicated.

35. Nonetheless, on or around April 04, 2024, Plaintiff was notified that their SEVIS record had been terminated. The termination reason provided in the SEVIS system stated: "OTHER – Individual identified in criminal records

check and/or has had their VISA revoked. SEVIS record has been terminated."

36. Since the termination of their SEVIS record, Plaintiff has experienced anxiety and uncertainty regarding their legal status in the United States and their ability to continue their studies.

37. They also fear being placed in removal proceedings and deported from the United States for what appears to be an erroneous termination of their SEVIS record, and what consequences such actions would have on their ability to re-enter the United States in the future.

38. The SEVIS terminations have created havoc and uncertainty for schools as well.  Upon information and belief, Plaintiff's college was not given any advanced warning or further explanation for the termination of Plaintiff's SEVIS status.  Schools are scrambling to respond to these unprecedented actions and determine whether and how they can help their students. *See* Liam Knox, *How Trump is Wreaking Havoc on the Student Visa System*, Inside Higher Ed, April 5, 2024, https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system.

39. Intervention by this Court is necessary to remedy Defendants' illegal conduct.

## <u>CLAIMS FOR RELIEF</u>

### FIRST CAUSE OF ACTION
### Administrative Procedure Act (5 U.S.C. §§ 701–706)

40. Plaintiff hereby incorporates by reference paragraphs 1 through 39 of this complaint.

41. The termination of Plaintiff's SEVIS record and alongside that, the termination of Plaintiff's F-1 status is a final agency action as contemplated by 5 U.S.C. § 704; *see also Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172 ("The order terminating these students' F-1 visas marked the consummation of the agency's decision making process, and is therefore a final order, for two reasons. First, there is no statutory or regulatory requirement that a student seek reinstatement after his or her F-1 visa has been terminated. Moreover, even if the students attempt to pursue the administrative procedures for reinstatement, there is no mechanism to review the propriety of the original termination order. Second, the students need not wait for removal proceedings to be instituted. As we stated in *Pinho*, an order's finality cannot depend on the institution of removal procedures which may never occur. And in any event, immigration judges cannot review the original denial of reinstatement.").

42. Under the APA, the Court must hold unlawful and set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or "without observance of procedure

14

required by law." 5 U.S.C. § 706(2)(A), (C), (D) Defendants' actions here meet all three of those standards.

## Not in Accordance with Law

43. The termination of Plaintiff's status was contrary to the governing law and regulations. DHS and ICE lacked any legal authority to terminate Plaintiff's F-1 status on the sole ground that the State Department revoked his visa. Such a basis is not enumerated in the regulations as a permitted reason for termination. On the contrary, the law affirmatively provides that visa revocation does not equate to a status violation. By terminating Plaintiff's status absent a failure to maintain status or one of the 8 C.F.R. § 214.1(d) criteria, Defendants acted "without the statutory authority to do so."

44. Furthermore, Plaintiff's criminal history does not trigger any of the reasons in the law by which Defendants could determine that he failed to maintain status, and such criminal history took place prior to his most recent entry and after extensive scrutiny by both the Department of State and Department of Homeland Security.

45. In essence, the agency invented a ground (arrest record or visa revocation) that has no legal footing, thereby violating the INA and its implementing rules.

46. An agency must act in accordance with its own regulations, and failure to follow those regulations (especially to the detriment of an individual) is

unlawful and invalid[1]. Here, ICE failed to adhere to 8 C.F.R. § 214.1(d) and 8 C.F.R. § 214.2(f), which exclusively govern status termination and maintenance. Therefore, the action was "not in accordance with law" and "in excess of…authority".

## Arbitrary and Capricious

47. Even aside from exceeding authority, the manner in which Defendants terminated Plaintiff's status was arbitrary and capricious. The agency offered no reasoned explanation connecting Plaintiff's circumstances to a failure to maintain status. There was no finding that Plaintiff violated the terms of his F-1 status, because he did not. Terminating an international student's status is a severe action that demands a rational basis grounded in the student's conduct or specific statutory authorization. Defendants instead relied on irrelevant factors (prior arrest record and visa revocation) and ignored the relevant considerations (Plaintiff's continued full-time study and compliance).

48. By doing so, Defendants failed to consider obvious important aspects, such as the DHS/ICE policy that visa revocation alone is not cause for termination. ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf. The decision runs counter to the evidence before the agency, which showed

---

[1] See *Accardi v. Shaughnessy, 347 U.S. 260 (1954)*

Plaintiff's status was valid. In sum, the termination lacked a rational connection between the facts and the decision made, rendering it arbitrary and capricious under 5 U.S.C. § 706(2)(A).

49. Accordingly, Plaintiff is entitled to relief under the APA. The SEVIS termination and any related agency determinations should be set aside as unlawful, and Defendants should be enjoined to restore Plaintiff to the position he would have been in had the illegal action not occurred (i.e., an active F-1 student). The Court should declare that Defendants' action was *ultra vires*, contrary to law, and direct appropriate corrective action.

## SECOND CAUSE OF ACTION
### Violation of the Fifth Amendment (Procedural Due Process)

50. Plaintiff realleges and incorporates paragraphs 1 through 41 of this complaint as if fully set forth herein.

51. The Fifth Amendment to the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." This protection extends to noncitizens present in the United States. Plaintiff, as an F-1 visa holder lawfully in the U.S., was entitled to due process in connection with any governmental deprivation of his liberty and property interests in continuing his studies and staying in the United States.

52. Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory

regulations.  Because these regulations impose mandatory constraints on agency action, and because SEVIS registration is necessary for a student to remain enrolled as an international student, Plaintiff has a constitutionally protected property interest in their SEVIS registration. *See, e.g., ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

53. Defendant terminated Plaintiff's SEVIS record based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond.  The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

### THIRD CAUSE OF ACCTION
### *Accardi* Doctrine

54. Plaintiff realleges and incorporates paragraphs 1 through 41 of this complaint as if fully set forth herein.

55. Under the *Accardi* Doctrine, Defendants are required to follow their own rules and procedures.  *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.")

56. Defendants are bound by 8 C.F.R. § 214.1(d)-(g), which dictate specific grounds under which student status may be terminated.

57. Defendants terminated Plaintiff's student record based on improper grounds under which such student status may be terminated.

58. Because Defendants terminated Plaintiff's SEVIS record based on improper grounds, such a termination should be set aside.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Rahul Tiwari respectfully requests that this Court enter judgment in his favor and grant the following relief:

A. Assume jurisdiction over this matter;

B. Declare that the termination of Plaintiff's SEVIS record was unlawful;

C. Vacate and set aside DHS's termination of Plaintiff's SEVIS record;

D. Order that Defendants restore Plaintiff's SEVIS record and F-1 student status;

E. Enter an order granting Plaintiff's attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. §2412; and

F. Issue public-facing clarifying guidance that SEVIS termination, in and of itself, does not disrupt student status, work authorization, or lawful presence;

19

G. Direct Defendants to provide specific guidance to (1) employers of international students impacted by SEVIS terminations; (2) universities and colleges in the United States; and (3) all Designated School Officials (DSOs), clarifying that SEVIS termination alone does not constitute grounds for adverse action and should not be interpreted as a disruption of legal status, work authorization, or educational eligibility;

H. Any other relief the court deems just and proper.

Respectfully submitted this 24th day of April 2025

   /s/  *Zachary R. New*

Zachary R. New
Atty. Reg. No. (Colorado): 53992
Joseph & Hall, P.C.
12203 East Second Ave.
Aurora, CO  80011
(303) 297-9171
FAX:  (303) 733-4188
zachary@immigrationissues.com
*Pro Hac Vice forthcoming


*/s/ Jennifer Cameron Moore*

(BBO# 693047)
Cameron Moore Law, PLLC
PO Box 3428
Worcester, MA. 01613
P: (857) 600-0178
F: (866) 834-7710
jen@cameronmoorelaw.com

***Attorneys for Plaintiff*

20

CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2025, I electronically filed the foregoing Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties shall be served in accordance with the Federal Rules of Civil Procedure.


                    /s/ *Jennifer Cameron Moore*


                    Cameron Moore Law, PLLC
                    PO Box 3428
                    Worcester, MA. 01613
                    P: (857) 600-0178
                    F: (866) 834-7710
                    jen@cameronmoorelaw.com